UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| WORLDWIDE EQUIPMENT OF TN, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | Civil No. 14-108-ART |
| Plaintiff, | | |
| v. | | **MEMORANDUM OPINION AND ORDER** |
| UNITED STATES OF AMERICA, | | |
| Defendant. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

If you see a horse running through a field, there's a good chance that he was not substantially impaired from running the day before.  It's not a sure thing, of course.  Maybe he recovered from his impairment overnight.  Maybe he's been drugged.  Or maybe he is just a very tough horse, able to run despite his impairment.  But if you had to bet on which of two horses was substantially impaired the day before—the one you just saw running or the one you just saw limping—would you really flip a coin to decide which one to pick?

Here, one of the things that the plaintiff must show is that its trucks were substantially limited or impaired in their ability to transport a load on a highway at the time the trucks were sold.  The plaintiff has now filed a motion in limine seeking to exclude any evidence about what the trucks were able to do after they were sold.  But evidence of whether the trucks were in fact able to operate on the highways after the sale is relevant—not conclusive, but relevant—to whether the trucks were substantially impaired or limited at the time of the sale.  Worldwide's motion in limine is therefore denied.

I.

The plaintiff, Worldwide Equipment, is a truck dealer headquartered in Prestonsburg, Kentucky. R. 72-1 ¶ 3. It is an authorized dealer for Mack Trucks, Inc., a manufacturer of heavy trucks. *Id.* Some of the trucks that Worldwide sold were designed to operate in the coalfields of Appalachia, particularly in Kentucky, West Virginia, and Tennessee. *Id.* ¶ 5. In 2008, Mack began selling a line of trucks that it branded the "Granite" or "GU" Series. *Id.* ¶ 24. That line included a truck known as the GU173. This truck was particularly versatile as it could be configured for different applications, including normal duty, heavy duty, and severe duty. *Id.* According to Worldwide, the Severe Duty GU173 is "designed for and sold to Worldwide's customers with the specific purpose of using them for off-road, coal-industry use." R. 72 at 12 (citing R. 72-1 ¶ 25).

According to the federal tax code, a seller must pay a twelve-percent excise tax on the "first retail sale" of an "[a]utomobile truck chassis [or] bod[y]" weighing more than 33,000 pounds. 26 U.S.C. § 4051(a)(1)(A), (a)(2). A "truck," according to the regulatory definition, is "a highway vehicle that is primarily designed to transport its load on the same chassis as the engine." 26 C.F.R. § 145.4051-1(e)(2). But a truck "shall not be treated as" a "highway vehicle" by the IRS if the vehicle qualifies as an "off-highway transportation vehicle." 26 U.S.C. § 7701(a)(48)(A). A vehicle is an "off-highway transportation vehicle" if it has two characteristics. First, an off-highway vehicle must be "specially designed for the primary function of transporting a particular type of load other than over the public highway." 26 U.S.C. § 7701(a)(48)(A)(i). Second, "because of this special design," an off-highway vehicle's "capability to transport a load over the public highway [must be] substantially limited or impaired." *Id.*

2

In 2008, the IRS took the position that the Severe Duty GU173 trucks were subject to the excise tax. Worldwide disagreed and filed the appropriate claims for administrative refunds. In those claims, Worldwide sought to recover the more than $4 million in federal excise taxes that Worldwide had paid on the sale of 227 trucks sold between September 2008 and June 2014. R. 72-1 at 7. The IRS denied those claims, at which point Worldwide filed this lawsuit. R. 1. The parties proceeded to discovery, and they have now filed dueling motions for summary judgment. *See* R. 72 (Worldwide's motion for summary judgment); R. 75 (government's motion for summary judgment). Worldwide has also filed a motion in limine. R. 71. That motion is now before the Court.

II.

In its motion, Worldwide asks the Court for an order forbidding the government to offer any evidence of how the trucks were used after they were sold. R. 71 at 10 ("Worldwide respectfully requests that the Court grant an Order precluding the United States from relying in any way on any post-sale evidence of the Subject Trucks' use[.]"). To prevail on a motion in limine, a party must show that the evidence in question is "clearly inadmissible" under the Federal Rules of Evidence. *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). The Rule that Worldwide has in mind here is 401, which provides that evidence is relevant so long as "it has any tendency to make a fact [of consequence] more or less probably than it would be without [that] evidence." Fed. R. Evid. 401. In Worldwide's view, it is irrelevant how the trucks were used post-sale. R. 71 at 3 (arguing that "post-sale evidence regarding the Subject Trucks' actual use is, as a matter of law, irrelevant to the determination of whether the Subject trucks constitute 'off-highway' vehicles under § 7701(a)(48)"). Thus, Worldwide argues, it is entitled to an order in limine.

3

A.

At a fundamental level, this case presents only one question: whether a certain truck—the Severe Duty GU173—is an "off-highway transportation vehicle," as the Internal Revenue Code defines that term. To show that the GU173 is such a vehicle, Worldwide must show three things. First, Worldwide must show that the truck was "specially designed for the primary function of transporting a particular type of load other than over the public highway." 26 U.S.C. § 7701(a)(48)(A)(i). Second, Worldwide must show that the truck's "capability to transport a load over the public highway is substantially limited or impaired." *Id.* Finally, Worldwide must show that this limitation (or impairment) was "because of [the] special design." *Id.*

The parties here agree that evidence of post-sale use is irrelevant to whether the trucks were "specially designed for the primary function of transporting a particular type of load other than over the public highway." 26 U.S.C. § 7701(a)(48)(A)(i). After all, the Sixth Circuit held precisely that. *See Worldwide Equip., Inc. v. United States*, 605 F.3d 319, 323 (6th Cir. 2010). And the government does not appear to argue that evidence of post-sale use would be relevant to show the reason for the substantial impairment or limitation, *i.e.*, whether it was "because of [the] special design" or because of some other reason. *See* R. 82 (government's brief). Instead, the parties dispute whether evidence of post-sale use is relevant to the question of whether the trucks' "capability to transport a load over the public highway [was] substantially limited or impaired." 26 U.S.C § 7701(a)(48)(A)(i).

The question presented in this motion is therefore as follows: does evidence of post-sale use make it more or less probable that the trucks were "substantially limited or impaired" in their "capability to transport a load over the public highway"? If the answer is clearly

4

"no," then Worldwide is entitled to an order in limine. If the answer is "yes"—or "maybe"—then Worldwide is not entitled to such an order.

Evidence showing a truck struggle to transport a load on a highway—in the manner of the Little Engine that Could—would make it more probable that the truck was indeed limited or impaired in its capability to transport a load over the public highway at the time of the sale. Evidence showing a truck fly down the highway with no apparent difficulties, on the other hand, would make it less likely that the truck was so limited or impaired. And thus it seems that evidence of how the trucks were used post sale would be relevant to whether their "capability to transport a load over the public highway [was] substantially limited or impaired." 26 U.S.C. § 7701(a)(48)(A)(i). Thus, it seems as if Worldwide is not entitled to an order in limine.

B.

Worldwide responds in a few ways. First, Worldwide argues that "[u]se evidence is irrelevant because the federal excise tax applies only to the 'first retail sale' of a vehicle." R. 71 at 6 (capitalization altered). In support of that argument, Worldwide quotes 26 U.S.C. § 4051, which indeed provides that the excise tax must be imposed on "the first retail sale" of the vehicle. *Id.* When deciding whether to impose a tax on the "first retail sale," the argument seems to go, the IRS could not have relied upon evidence about how the trucks were used after that sale. Thus, Worldwide concludes, evidence of post-sale use is irrelevant.

The question before the Court, however, is not whether the IRS's decision was correct ex ante, *i.e.*, whether the IRS made the right decision given the evidence that the IRS had in front of it at the time of sale. The goal is not to evaluate the strength of the IRS's reasoning. If the IRS decided a taxpayer's marginal rate on the basis of a Ouija Board, he would of

5

course have grounds for a refund if the board produced the wrong rate. But if the board happened to get it right—and produced the proper marginal rate under the law—on what legal basis would the taxpayer be entitled to a refund? The question here is whether the IRS made the right decision *period, i.e.*, whether the trucks were in fact subject to the excise tax. To determine the answer to that question, the Court needs to decide whether the trucks were, in fact, substantially limited or impaired in their ability to travel on the highways. For the reasons given above, evidence of post-sale use is relevant to that decision. And meanwhile nothing in the statute suggests that the Court cannot rely on ex-post evidence in making that determination. So this argument fails.

Second, Worldwide argues that evidence of post-sale use is irrelevant because "a vehicle's design is determined solely on the basis of its physical characteristics." R. 71 at 7 (emphasis omitted) (citing 26 U.S.C. § 7701(a)(48)(A)(ii)). "There can be no question," Worldwide says, "that actual use is irrelevant to the design prong." *Id.* That is true as a matter of Sixth Circuit law: The Circuit held in *Worldwide I* that post-sale-use evidence is irrelevant to whether a vehicle is "specially designed for the primary function of transporting a particular type of load other than over the public highway." 605 F.3d at 322–23. But Worldwide goes on to say that "such evidence is also irrelevant under the substantial impairment prong, because a vehicle's impairment is to be determined based on its special design." R. 71 at 7–8 (emphasis omitted).

Not quite. The statute does say that the vehicle's impairment must be "because of" the "special design." 26 U.S.C. § 7701(48)(A)(i). And thus, to avoid the tax, a taxpayer must ultimately show the *reason* for the impairment—the impairment must be because of the design rather than because of some other reason (a flat tire, for example). But the reason

6

for the impairment is irrelevant unless the vehicle is impaired in the first place, just as a defendant's mens rea is irrelevant unless he has committed the actus reus in the first place. And the statute here in no way limits the kinds of evidence that a court may use to "determine" that a vehicle is substantially impaired. For the reasons given above, evidence of post-sale use is indeed relevant to whether the vehicle was impaired in the first place, which means this argument fails.

Third, Worldwide points out that the statute lists various factors that a court may use to determine "whether substantial limitation or impairment exists," and Worldwide notes that "evidence of post-sale use" appears nowhere on the list. *See* 26 U.S.C. § 7701(a)(48)(A)(iii). The problem, of course, is that the list is not an exhaustive one. The statute says specifically that "account *may* be taken of factors *such as*" the size of the vehicle, whether the vehicle is subject to licensing requirements, and so on. 26 U.S.C. § 7701(a)(48)(A)(iii) (emphasis added). And the statute nowhere suggests that these are the *only* factors that a court may consider.

Fourth, Worldwide says "[i]f, as the United States suggests, post-sale use evidence can be considered in applying the tax, it raises a host of practical problems." R. 71 at 8. Specifically, Worldwide says that "[i]t would be utterly impractical to base a vehicle's taxability on how a handful of its purchasers . . . happened to use the vehicle." *Id*. "Were that the standard," Worldwide says, "purchasers would be left in the tenuous position of never knowing whether they may retroactively be charged by the IRS for having failed to pay the federal excise tax." *Id.* at 8–9.

As far as the Court can tell, however, Worldwide is mischaracterizing the government's argument. The argument is not that *the IRS* is entitled to use post-sale use

7

evidence to decide whether to levy the tax in the first place. The argument is that *the Court* may examine evidence of post-sale use to determine whether the IRS's decision was correct with respect to Worldwide's trucks. The Court's "task is to decide this case, not hypothetical ones." *United States v. Carpenter*, 819 F.3d 880, 889 (6th Cir. 2016). "[A]nd in this case there are no [retroactive taxes] to be found." *Id.* Whether the IRS could retroactively determine that a truck sale was taxable is a question that the Court will leave for a different day.[1]

Fifth, Worldwide argues that post-use evidence is irrelevant because § 7701 "makes clear that both the special design and substantial impairment prongs are to be determined solely based on a vehicle's 'physical characteristics.'" R. 93 at 5 (citing 26 U.S.C. § 7701(a)(48)(A)(ii)). As an initial matter, the statute makes clear that only *part* of the substantial-impairment prong is to be determined solely based on a vehicle's physical characteristics. After all, to satisfy that prong, the taxpayer must show both that the vehicle was substantially impaired and that the reason for the impairment was the vehicle's "special design." Although the statute does say that "a vehicle's *design* is determined solely on the basis of its physical characteristics," nothing in the statute suggests that things other than

---

[1] For what it is worth, the Court is not as certain as Worldwide is that the IRS could not—as a matter of law—decide to impose a tax retroactively. For example, if a retailer sold a truck, and the IRS later learned that the truck was fully capable of transporting loads over the public highways, what would prevent the IRS from taxing the retailer? After all, if a truck is not substantially impaired, then the tax code requires the retailer to pay the tax. And if the IRS was initially mistaken—or misled—about whether the truck was impaired, what would prevent the IRS from later changing its mind on the basis of better evidence? True, the code provides that the tax is "hereby imposed on the first retail sale" of the truck. 26 U.S.C. § 4051(a)(1). And Worldwide believes that language is conclusive proof that the IRS could not impose a tax retroactively. But the Court is not so sure. After all, this section of the code says nothing explicit about *when* the IRS may impose a tax on that first sale.

physical characteristics are "off limits" when determining whether the vehicle is impaired in the first place. 26 U.S.C. § 7701(a)(48)(A)(ii) (emphasis added).[2]

Moreover, evidence of what an object can do often provides compelling evidence of that object's "physical characteristics." For example, if an animal is observed flying through the air, that is fairly strong evidence that the animal has certain physical characteristics, namely wings. Thus, even if it is true that the Court must determine based on "physical characteristics" alone whether the truck is substantially impaired, evidence of post-sale use is still relevant.

Sixth, Worldwide argues that evidence of post-sale use is irrelevant because the trucks could have changed between the time of sale and the time when that evidence was collected. *See* R. 93 at 5 ("[T]he United States has not demonstrated that these trucks are unaltered from their condition at the time of sale—e.g., that they have identical tires, axles, steering, etc.—and would not change their performance. . . . [T]he government has provided no expert examination or testing of a Subject Truck that is in the same condition as it was at the time [of the] sale; rather, the United States has sought out several of the Subject Trucks and observed their actual use over the public highway years after their initial sale."). Because the trucks could have been modified post sale, the argument seems to go, evidence of how they operated post sale is irrelevant to how they operated at the time of the sale.

True, sometimes the fact that something happened later is irrelevant to what happened earlier. For example, if the question is whether the street light was red or green at 2:00 p.m.,

---

[2] Indeed, the statute specifies that court may consider "whether such vehicle is subject to the licensing, safety, and other requirements applicable to highway vehicles." And to determine whether a vehicle is subject to licensing requirements, the Court would need to examine more than just the vehicle's "physical characteristics." At the very least, the Court would need to examine the licensing requirements.

9

evidence that the light was red at 2:30 p.m. is irrelevant. The reason is that street lights change over the course of a half-hour and thus information about how a light appeared at 2:30 p.m. suggests nothing about how it appeared a half-hour earlier. But sometimes after-the-fact evidence does provide information about what happened earlier. If the question is whether a man had long hair on March 10th, evidence that he had long hair on the 9th is surely relevant. Indeed, such evidence would probably be conclusive, assuming the hair is real: long tresses do not spring up overnight.

      The after-the-fact evidence here presents a middle case between these two examples. The fact that the trucks were able to drive on the public roads after the sale does not show conclusively that the trucks were substantially impaired at the time of the sale. Perhaps the trucks were modified in the intervening period. Or perhaps the trucks were driving on the highway despite their substantial impairment—the undersigned is substantially impaired from jogging after eating a tray of cookies, but he gives it a go from time to time nevertheless. But relevant does not mean conclusive. That a defendant's hair was found at the crime scene a day after a murder is hardly conclusive evidence that his hair (and the rest of his body) was at the crime scene on the day of the murder. Perhaps it was there before the murder; perhaps it was planted after. But it is surely relevant evidence about whether the defendant was there on the day of the crime. Similarly, that the trucks were driving on the highways after the sale is at least relevant to whether they were substantially impaired from doing so at the time of the sale.

      Seventh, Worldwide argues that the Sixth Circuit's decision in *Worldwide I* shows that evidence of post-sale use is irrelevant. In particular, Worldwide points to two statements from that decision. In the first, the Circuit said that "[a] vehicle's taxability is determined

by application of an ex ante analysis that examines a vehicle's intended primary design." 605 F.3d at 322. In the second, the Circuit said that "[a] use test would be unworkable since there would be no way of knowing how a given article would be used by the consumer at the time of sale." *Id.* (quoting *Dillon Ranch Supply v. United States*, 652 F.2d 873, 881 (9th Cir. 1981)). Given these statements from the Sixth Circuit, Worldwide concludes, this Court cannot allow the government to offer evidence of post-sale use.

The problem with that argument is that the *Worldwide I* court was addressing only whether evidence of post-sale use was relevant to the "design" prong of § 7701. As the court went out of its way to make explicitly clear, the *Worldwide I* decision said nothing about whether evidence of post-sale use was relevant to the "substantial impairment" prong. 605 F.3d at 325 n.5 ("[A]s noted *infra*, the district court did not reach [the substantial-impairment prong] and the Government on appeal does not request that we do so."); *id.* at 332 ("The Government has not requested that we consider and rule on [the substantial-impairment prong]; its appellate brief states that in the event this court were to hold that summary judgment in its favor was not warranted on the issue whether the trucks satisfy [the special-design prong], the case should be remanded for a trial on that issue and, if then necessary, for a determination whether the trucks meet the additional requirement set forth in [the substantial-impairment prong]."). Worldwide appears to recognize this problem, noting that "the Sixth Circuit did reverse [only] on the special design prong." R. 93 at 6. But Worldwide nevertheless contends that the Circuit's "discussion at the beginning of the opinion of the overarching legal framework at issue" shows that Worldwide is entitled to a motion in limine here. *Id.* To answer that argument on its own terms: This Court is bound by holdings, not

11

"discussions," and no holding in the *Worldwide I* decision implies that post-sale use evidence is irrelevant to the substantial-impairment prong of § 7701(a)(48)(A)(iii).

Eighth, Worldwide cites cases from other courts holding that evidence of post-sale use is irrelevant to whether a vehicle is substantially impaired or limited. *See* R. 71 at 5 (citing *Worldwide Equip., Inc. v. United States*, 7:04-cv-00451, R. 185 at 1–7); *id.* at 6 (citing *Freightliner of Grand Rapids v. United States*, 351 F. Supp. 2d 718 (W.D. Mich. 2004)); R. 93 at 9 (citing *Myles Lorentz, Inc. v. Commissioner*, 138 T.C. 40 (2012)). None of those cases were decided by the Sixth Circuit or United States Supreme Court, however, and thus this Court is not bound by them. They are at most persuasive authority. And with due respect to those courts, this Court is not persuaded by them—for all of the reasons given above.

In sum, evidence of post-sale use seems relevant to whether Worldwide's trucks were substantially impaired or limited in their ability to carry a load on a highway. At the very least, it is not "clear" that such evidence is irrelevant. *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. Accordingly, Worldwide's motion in limine to exclude all post-sale use evidence, R. 71, is **DENIED.**

This 15th day of June, 2016.

Signed By:
*Amul R. Thapar* AT
United States District Judge