UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

WORLDWIDE EQUIPMENT OF TN, INC.,

       Plaintiff,

v.

UNITED STATES OF AMERICA,

       Defendant.

)
)
)
)
)
)
)
)
)
)
)

Civil No. 14-108-ART

**MEMORANDUM OPINION
AND ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

It's difficult to win summary judgment when the legal question presented uses nebulous adjectives like "specially" and "substantially."   The question presented here requires the factfinder to characterize a certain type of dump truck—specifically, to determine whether it was "specially designed" for use off the public highways and "substantially limited or impaired" for use on them.   In the plaintiff's view, every reasonable factfinder would find that the trucks were both specially designed and substantially limited in these ways.   In the government's view, every reasonable factfinder would find that the trucks were not substantially limited for use on the highways.   And thus both parties moved for summary judgment.   But one factfinder's "substantial limitation" is another factfinder's "minor limitation"; one factfinder's "special design" is another factfinder's "inadvertent capability."   And meanwhile the parties have submitted a few dictionaries' worth of evidence detailing their views about the true nature of the trucks: expert reports, depositions, photographs, maps, GPS data—the list goes on.   If a reasonable

factfinder were to view this evidence in the light most favorable to the government, he might conclude that the trucks were not specially designed for off-highway use or substantially limited for on-highway use. But if a reasonable factfinder were to view this evidence in the light most favorable to the plaintiff, he might conclude that the trucks were indeed substantially limited for off-road use. When the evidence has this magic-eye quality to it—appearing one way from one angle and another way from a different angle—a genuine issue of material fact remains. The Court must therefore deny both parties' motions for summary judgment.

## I.

The plaintiff, Worldwide Equipment, is a truck dealer headquartered in Prestonsburg, Kentucky. R. 72-1 ¶ 3. It is an authorized dealer for Mack Trucks, Inc., a manufacturer of heavy trucks. *Id.* Some of the trucks that Worldwide sold were designed to operate in the coalfields of Appalachia, particularly in Kentucky, West Virginia, and Tennessee. *Id.* ¶ 5. In 2008, Mack began selling a line of trucks that it branded the "Granite" or "GU" Series. *Id.* ¶ 24. That line included a truck known as the GU713. This truck was particularly versatile as it could be configured for different applications, including normal duty, heavy duty, and severe duty. *Id.* According to Worldwide, the Severe Duty GU713 is "designed for and sold to Worldwide's customers with the specific purpose of using them for off-road, coal-industry use." R. 72 at 12 (citing R. 70-1 ¶ 25).

According to the federal tax code, a seller must pay a twelve-percent excise tax on the "first retail sale" of an "[a]utomobile truck chassis" or "bod[y]" weighing more than 33,000 pounds. 26 U.S.C. § 4051(a)(1)–(2). A "truck," according to the regulatory definition, is "a highway vehicle that is primarily designed to transport its load on the same

chassis as the engine." 26 C.F.R. § 145.4051-1(e)(2).   But a truck "shall not be treated as a highway vehicle" by the IRS if the vehicle qualifies as an "[o]ff-highway transportation vehicl[e]."   26 U.S.C. § 7701(a)(48)(A).   A vehicle is an "off-highway transportation vehicle" if it has two characteristics.   First, an off-highway transportation vehicle must be "specially designed for the primary function of transporting a particular type of load other than over the public highway."   *Id.* § 7701(a)(48)(A)(i).   Second, "because of this special design," an off-highway transportation vehicle's "capability to transport a load over the public highway [must be] substantially limited or impaired."   *Id.*

In 2008, the IRS took the position that the Severe Duty GU713 trucks were subject to the excise tax.   R. 1 ¶ 1.   Worldwide disagreed and filed the appropriate claims for administrative refunds.   *Id.* ¶ 26.   In those claims, Worldwide sought to recover the more than $4 million in federal excise taxes that Worldwide had paid on 227 trucks that it sold between September 2008 and June 2014.   R. 72 at 16 (citing R. 72-1 ¶ 35).   The IRS denied those claims, at which point Worldwide filed this lawsuit.   R. 1.   The parties proceeded to discovery, and they have now filed dueling motions for summary judgment.   *See* R. 72 (Worldwide's motion for summary judgment); R. 75 (government's motion for summary judgment).   Worldwide filed a motion in limine seeking to preclude the government from offering any evidence as to how the trucks were used post-sale—either at trial or at the summary-judgment stage.   R. 71.   The Court denied that motion.   R. 105.   The parties' motions for summary judgment are now properly before the Court.

## II.

### A.

As an initial matter, the government argues that the Court lacks jurisdiction over this case because Worldwide failed to comply with the provisions of 26 U.S.C. § 7422(a). According to that section of the Internal Revenue Code, a plaintiff may not "maintain[]" any suit seeking to recover a "tax alleged to have been erroneously or illegally assessed or collected" if he has not filed "a claim for refund or credit . . . with [the IRS], according to the provisions of law in that regard." The Supreme Court has interpreted § 7422(a) to mean exactly what it says. If the taxpayer fails to "file a refund claim with the IRS," then the taxpayer "may bring '[n]o suit' in 'any court' to recover 'any internal revenue tax' or 'any sum' alleged to have been wrongfully collected 'in any manner.'" *United States v. Clintwood Elhorn Mining Co.*, 553 U.S. 1, 7 (2008); *see also id.* ("[W]e cannot imagine what language could more clearly state that taxpayers seeking refunds of unlawfully assessed taxes must comply with the Code's refund scheme before bringing suit."). In short, if a taxpayer files a suit before filing a refund claim, he is out of luck—the court must dismiss the suit for lack of jurisdiction. *See United States v. Dalm*, 494 U.S. 596, 601 (1990); *Thomas v. United States*, 166 F.3d 825, 828–29 (6th Cir. 1999) (holding that "a federal court does not have jurisdiction" over a taxpayer's claim unless the taxpayer has "file[d] a sufficient administrative claim with the IRS").

The parties agree that Worldwide filed "a refund claim with the IRS" before "bringing suit." But the government contends that Worldwide failed to do so "according to the provisions of law in that regard." 26 U.S.C. § 7422(a). In support of that contention, the government cites 26 U.S.C. § 6416(a)(1)(D), which provides that "no [excise-tax]

credit or refund . . . shall be allowed or made unless the person who paid the tax establishes . . . that he has filed with the [IRS] the written consent of [the ultimate purchaser]." Worldwide admits that it "did not have the written consents of its customers at the time it filed this suit." R. 72 at 17. In the government's view, therefore, Worldwide failed to file a refund claim "according to the provisions of law"—specifically § 6416—"in that regard." *See* R. 83 at 4 (arguing that Worldwide may "proceed here only if [Worldwide] satisfied § 6416(a)(1)(D) before [Worldwide] filed suit"). Thus, the government argues, Worldwide may not "bring any suit to recover any tax" that its customers paid on the trucks. *Id.* at 4–5 (citing 26 U.S.C. § 7422(a)). Hence the government asks the Court to dismiss this case for lack of jurisdiction. *Id.* at 1.

That would be a compelling argument if § 6416 said that a taxpayer must file the consents before filing a "claim." If that were so, then a taxpayer would obviously need to file the consent forms before filing the claim in order to comply with "the provisions of law" related to claim filing under § 7422. If he failed to do so, then § 7422 would prevent him from filing suit in any court. *Clintwood*, 553 U.S. at 7. The Court would therefore have no choice but to dismiss his suit for lack of jurisdiction. *Thomas*, 166 F.3d at 828.

What § 6416 actually says, however, is that the IRS may not "allo[w] or ma[k]e" a refund before the taxpayer files the consents. It says nothing about what a plaintiff must do before filing a claim. And nothing else in the statute suggests that a plaintiff must file the consents before filing a lawsuit. That Worldwide filed a claim before filing the consents, therefore, does not mean that Worldwide failed to file its claim "according to the provisions of law in that regard." Hence § 7422 does not bar Worldwide from "maintain[ing]" suit in this Court. The Court therefore has jurisdiction.

The government responds with a case from the Seventh Circuit, *West v. United States*, 397 F.2d 381 (7th Cir. 1968).  There, the Circuit held that a court lacks jurisdiction over a tax suit like this one if the plaintiff failed to file the consent forms before filing a refund claim.  *Id.* at 382–83.  In the Circuit's view, § 6416 and the "regulations implementing [it]" require "a taxpayer to submit in support of his claim a statement or consent as described in the statute."  *Id.* at 382.  But the *West* court did not identify these implementing regulations.  Nor does the government in its brief.  And meanwhile the plain language of § 6416 says nothing about whether a taxpayer must file the consent forms before filing a claim.  It merely specifies what a taxpayer must do before receiving a refund (more precisely, what a taxpayer must do before the IRS may "allo[w] or ma[k]e" a refund to the taxpayer).  Thus, the Court believes that *West* misinterpreted § 6416.  And given that *West* comes from the Seventh Circuit rather than the Sixth, this Court is not required to follow that opinion in this case.[1]  The Court declines to do so for the reasons given above.

## B.

Next, the government argues that the "variance rule" prevents Worldwide from recovering any "tax[es] paid on trucks not designed especially to haul coal off-road," such as trucks designed to haul water, fuel, and lubricants.  R. 83 at 10.  "A taxpayer must first file an administrative claim for refund with [the IRS] prior to bringing an action against the United States for a tax refund."  *McDonnell v. United States*, 180 F.3d 721, 722 (6th Cir. 1999) (citing 26 U.S.C. § 7422(a)).  In that claim, the taxpayer "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the

---

[1] As the government admits, "[T]he Sixth Circuit has not had an opportunity to apply § 6416(a)(1)(D)."  R. 75-2 at 25.

6

[IRS] of the exact basis thereof." 26 C.F.R. § 301.6402-2(b)(1). If the taxpayer "fails to state with specificity the grounds for the refund," then the federal courts are "without jurisdiction to entertain the action." *McDonnell*, 180 F.3d at 722.

This rule—which is often called the "variance rule"—prevents a taxpayer from "impermissibly vary[ing] or augment[ing] the grounds originally specified by the taxpayer in the administrative refund claim." *McDonnell*, 180 F.3d at 722; *see also Young v. United States*, 332 F.3d 893, 894–95 (6th Cir. 2003). The purpose of the rule is to "prevent[] surprise and adequately notif[y] the IRS of the claim and its underlying facts." *Id.* at 895. In sum, "[f]ederal courts have no jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim." *McDonnell*, 180 F.3d at 722 (quoting *Charter Co. v. United States*, 971 F.2d 1576, 1579 (11th Cir. 1992)).

In Worldwide's administrative claims, it asked for a refund on trucks that it characterized as being "designed to haul coal under severe conditions off-highway." R. 72-2 at 11; *see also* R. 75-43 at 3 ("Based on the above, the trucks are specifically designed for transporting a coal load and [their] use on public highways would be substantially impaired."). The government asserts that Worldwide used similar language in all of its administrative claims, R. 92 at 3, and Worldwide appears to concede that point, R. 81 at 13–16.

As it turns out, however, Worldwide wants this Court to grant a refund on some trucks that are "not the same as a coal hauler." R. 79 at 47. These other trucks were equipped to haul fuel, lube, water, or fly ash (a coal by-product). R. 75-4 (cataloguing the trucks for which Worldwide seeks a refund). Trucks designed to haul water are not trucks

designed to haul "coal under severe conditions off-highway." R. 72-2 at 11. Nor are they "specifically designed for transporting a coal load." R. 75-43 at 3. They are specifically designed to haul water. And water, to put things plainly, is not coal. The same is true for the trucks that were designed to haul fuel, lube, or fly ash. One could not say with a straight face that trucks designed to haul these other things were in fact designed to haul coal. Thus, it appears that Worldwide "impermissibly var[ied] or augment[ed] the grounds [that it] originally specified . . . in [its] administrative refund claim." *McDonnell*, 180 F.3d at 722.

Worldwide responds in a few ways. First, it says that the variance rule does not bar its claims because "[a]ll of the Subject Trucks . . . were designed and sold for use off-highway in coal-mining related operations[.]" R. 81 at 14 (citing 72-1 at 7). Perhaps so. But Worldwide did not tell the IRS, in broad fashion, that the trucks were to be used in "coal-mining related operations." Worldwide told the IRS that the trucks were to be used specifically to "haul coal." R. 72-2 at 11. Jumbo jets and sunglasses are both "used in commercial airliner operations," but a request for a tax refund on a 747 hardly entails a request for a tax refund on a set of Ray-Bans. The taxpayer must "do more than give the government a good lead[.]" *Charter*, 971 F.2d at 1579. Instead, he must state "with specificity the grounds for the refund." *McDonnell*, 180 F.3d at 722. And Worldwide's claim for a refund on trucks designed to "haul coal" hardly stated "specifi[c]" grounds for a refund on trucks designed to haul water, lubricants, and so on.

Second, Worldwide cites to language—from an unpublished case—suggesting that the variance doctrine applies only if the government was "unfairly surprised and denied a fair opportunity to resolve the matter administratively." R. 81 at 13 (quoting *Tigrett v.*

*United States*, 213 F. App'x 440, 444 (6th Cir. 2007)).   In Worldwide's view, the government's "consideration of Worldwide's claims would not have been in any way impacted [if] Worldwide [had] listed the different body types for certain of the Subject Trucks, as the IRS's consideration of these claims would have been the same regardless of body type."  R. 81 at 15–16.

It is true, of course, that the IRS probably would have denied Worldwide's request for a tax refund even if Worldwide had told the IRS about the trucks' true purposes.  After all, to obtain a refund, Worldwide needed to show that the trucks were "specially designed for the primary function of transporting a particular type of load other than over the public highway."   26 U.S.C. § 7701(a)(48)(A)(i).   And if the IRS denied the refund when it thought that a certain truck was specially designed to haul coal, it is hard to see why the IRS would have approved the refund if it thought that the truck was specially designed to haul water, fuel, lube, or fly ash.

The variance rule is a bit broader than that, though.  To avoid a variance, it is not enough to show that the IRS would have reached the same result—"claim denied"—if the taxpayer had stated the accurate grounds for a refund.  If that were true, then the taxpayer could file a refund claim with little supporting argument then proceed directly to litigation, thus defeating the purpose of the variance rule: "to give the IRS adequate notice of the claim and its underlying facts so that it can make an administrative investigation and determination regarding the claim."  *McDonnell*, 180 F.3d at 722.  Worldwide misstated the underlying facts here, thus depriving the IRS of fair notice.  The variance rule therefore applies.

Moreover, if it's prejudice and surprise that Worldwide wants, it's prejudice and surprise that the government has shown.  IRS agents testified that they were surprised to learn, during the administrative proceedings, that Worldwide wanted a refund on trucks designed to haul fuel, lube, water, or fly ash.  *See, e.g.*, R. 87 at 129–30, 131–32 (deposition of Linda Marie Wentzel).  And thus the IRS had no opportunity to evaluate the strength of those claims.  The government is right that it "began this litigation without the benefit of any prior investigation related to these new trucks at the administrative level." R. 92 at 5.

Indeed, even Worldwide's complaint mentions nothing about trucks designed to haul things other than coal.  Instead, the complaint recites the language from the refund claim: that "[t]he trucks which are the subject of this litigation are specially designed for transporting a coal load."  R. 1 at ¶¶ 10–12.  Thus, the government truly had "no real opportunity to take meaningful discovery on [Worldwide's] evidence or expert opinions related to these new trucks."  R. 92 at 6; *see McDonnell*, 180 F.3d at 722.  This Court therefore lacks jurisdiction over Worldwide's claims seeking refunds for trucks designed to haul fuel, lube, water, or fly ash.

The government also argues that the Court lacks jurisdiction over Worldwide's claims for refunds on coal trucks sold "with on-off-road tires," "with a fifth wheel," and as a "generic cab-and-chassis" with "no vocational body whatsoever."  R. 75-2 at 21–22.  But it is at least conceivable that a truck sold with on-off-road tires is nevertheless a truck "designed to haul coal under severe conditions off highway."  R. 72-2 at 11.  The same is true for trucks sold with a fifth wheel and with no specific body attached.  And meanwhile Worldwide explained in its administrative claim why, in its view, these trucks were

designed to haul coal—specifically, that the trucks "do not travel at regular highway speeds[,] would require a special permit for highway use[,] and are overweight and overwidth for regular or legal highway use."  R. 72-2 at 11.  Thus, the government's arguments seem to go to the merits of the case—whether the trucks in fact satisfied the provisions of § 7701(a)(48)(A)(iii)—rather than to whether Worldwide has violated the variance rule.

Obviously, if the trucks indeed had tires that were designed to go on the highway, then that fact might make it more likely that the trucks were properly subject to the tax. The same is true for the trucks sold with the fifth wheel and the trucks sold without a "vocational body."  Thus, the Court will ultimately need to decide what to make of those features.  But given the information included in the administrative claim, the Court cannot conclude that the government lacked proper notice as to what kind of trucks Worldwide believed should be exempted from the tax.  With respect to these kinds of trucks, Worldwide's statement that they were designed "to haul coal" is enough to avoid the variance rule.

### III.

Now that the undercard fights are over, it is time for the main event.  Both the government and Worldwide argue that they are entitled to summary judgment on the merits.  To prevail on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once a party has met its initial burden of showing that no genuine issue of material of fact remains, the other side must present "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  To do so, the other side must present "significant probative evidence . . . on which a reasonable [factfinder] could return a verdict" in his favor. *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009).  When considering whether the moving party has met its burden, the Court must construe all the evidence "in the light most favorable to the party opposing summary judgment."  *Anderson*, 477 U.S. at 261 n.2.

At a high level of generality, this case presents only one question: whether a certain truck—the Severe Duty GU713—is an "off-highway transportation vehicle," as the Internal Revenue Code defines that term.  To show that the Severe Duty GU713 is such a vehicle, Worldwide must show three things.  First, Worldwide must show that the truck was "specially designed for the primary function of transporting a particular type of load other than over the public highway."  26 U.S.C. § 7701(a)(48)(A)(i).  Second, Worldwide must show that the truck's "capability to transport a load over the public highway is substantially limited or impaired."  *Id.*  Finally, Worldwide must show that this limitation (or impairment) was "because of [the] special design."  *Id.*

Worldwide bears the burden of showing each of these three things.  *See Firsdon v. United States*, 95 F.3d 444, 448 (6th Cir. 1996) (noting that the taxpayer bears the ultimate burden of persuasion).  If Worldwide is to prevail on summary judgment, therefore, Worldwide needs to demonstrate that all reasonable factfinders would find that it had shown these three things—even after viewing all the evidence in the light most favorable to the government.  For the government to prevail on summary judgment, on the other hand, it needs to show that all reasonable factfinders would find that Worldwide had failed to show at least one of these things—even after viewing all the evidence in the light most favorable

to Worldwide.  If it is impossible to say exactly what a reasonable factfinder would find, however, then the Court must deny summary judgment to both parties and proceed to trial.

## A.  Special design

Worldwide argues that it is entitled to summary judgment on the special-design prong.[2]  To reiterate, to prevail on this prong Worldwide must show that the truck was "specially designed for the primary function of transporting a particular type of load other than over the public highway."  26 U.S.C. § 7701(a)(48)(A)(i). To determine whether a vehicle was "specially designed" in this way, a court may look only at the vehicle's "physical characteristics."  26 U.S.C. § 7701(a)(48)(A)(ii).  A truck can be specially designed for off-highway use even though it can travel on the highways—and even if it is used on the highways more than "incidentally."  *Worldwide Equip., Inc. v. United States*, 605 F.3d 319, 324–25 (6th Cir. 2009) ("Highway use that is more than incidental does not necessarily mean the truck was not designed primarily for off-highway use.").  In other words, a vehicle can be specially designed for highway use even though its owners can put it to other uses, too.

Here, Worldwide argues that it is entitled to summary judgment because, according to Worldwide, "[t]he undisputed evidence demonstrates that the Subject Trucks were

---

[2] The government does not argue that it is entitled to summary judgment on the special-design prong.  In the government's summary-judgment brief, it argues that "the Court should render summary judgment [because Worldwide] cannot show [that] their dump truck's purported special design limits or impairs its capability to transport a load on a public road substantially."  *See* R. 75-2 at 39.  The government does not argue that the Court should grant summary judgment because Worldwide cannot show that their trucks were specially designed for off-road use.  *See id.*; *see also* R. 81 at 11 ("The United States has only moved for summary judgment on the second prong of § 7701(a)(48)'s two-part test for determining whether a vehicle is designed for 'off-highway' use and, therefore, not subject to the federal retail excise tax.").  The reason is presumably that the Sixth Circuit in *Worldwide* reversed the district court's grant of summary judgment as to this prong.  *See Worldwide Equip., Inc. v. United States*, 605 F.3d 319, 331, 332 (6th Cir. 2009).

specially designed by Mack and Worldwide for off-highway operation in coal mining operations." R. 72 at 27. In support of that argument, Worldwide points to the following evidence in its favor: testimony from Worldwide's CEO that the trucks were "designed with the intended purpose of being used off-road in coal mining-related operations," *Id.* at 28 (citing R. 72-1 ¶¶ 12, 16, 24–26); testimony from Worldwide's CEO that the trucks were "significantly more robust and expensive than on-highway trucks for the specific purpose of allowing the Trucks to operate in rugged, severe duty environments," *id.* (citing R. 72-1 ¶¶ 30, 32); testimony from a Mack employee suggesting that "these are off-road trucks," *Id.* at 27 (citing R. 72-12 at 99); testimony that the trucks had heavy rear axles, heavy front axles, custom transmissions, heavy frames, larger suspension systems, high-horsepower engines, robust drive lines, ceramic clutches, and tires labeled "not for highway service," R. 72 at 29–34 (citing several different depositions); and testimony from three expert witnesses suggesting that "the Subject Trucks were specially designed for the primary function of transporting a particular type of load other than over the public highway," *Id.* at 27. Given that evidence, a reasonable factfinder could certainly find that these trucks were "specially designed for the primary function of transporting a particular type of load other than over the public highway." 26 U.S.C. § 7701(a)(48)(A)(i). Indeed, the Sixth Circuit held as much in *Worldwide* when presented with similar evidence. *Worldwide*, 605 F.3d at 326.

To prevail on summary judgment, however, Worldwide needs to show a bit more than that. The fact that a reasonable factfinder *could* find in favor of a plaintiff does not mean that a reasonable factfinder *must* do so. This is especially true when the factfinder

must view the evidence in the light least favorable to Worldwide.  *See Anderson*, 477 U.S. at 261 n.2.

Here, the government has some evidence of its own.  And that evidence suggests that the special-design question is not as clear-cut as Worldwide makes it seem.  For example, the government has presented evidence that the Mine Health and Safety Administration has not certified the trucks as safe or suitable for hauling coal, R. 83-6; that "there's nothing unique about hauling coal that somehow affects the required truck elements . . . as opposed to hauling dirt[,]" R. 67-1 at 69; that the trucks were suitable for "any application" regardless of whether the trucks were "going to be used on-highway, off-highway, or both," *id.* at 41–44; that the trucks could "physically drive down the highway," *id.* at 192; that buyers sometimes prefer more robust parts for durability in on-road vehicles rather than for the purpose of hauling loads off-road, R. 66-1 at 277–78; that the "special features" on Worldwide trucks—the heavy axles, the high-horsepower engines, and so on—also appear on vehicles designed for highway use, R. 83 at 19 n.4 (cataloguing this testimony); and that "the generic cab-and-chassis in [Worldwide's] dump truck could end up in an oil-patch bed truck, [a] generic open-top dump, a timber truck, a water truck, a van box or crate truck, a cement mixer, a 'roll-on roll-off truck,' a garbage truck, or a fifth wheel to tow a trailer," *id.* at 18 (citing R. 67-1 at 59–61; R. 66-1 at 123–25; R. 75-30 at 36–39).  As one expert put it "[t]here's just almost an infinite number of kinds of things you can put on a truck."  R. 66-1 at 123.  Some of those things—a load of coal, for example—might be hauled mostly off-road, thus suggesting, perhaps, that the truck itself was "specially designed" for the primary purpose of hauling a specific type of load off the highway.  But some of those things—a cement mixer or a van box, for example—are often

15

seen on the public highways, thus suggesting that the truck itself might not have been specially designed for off-road use.

After viewing all of this evidence—Worldwide's as well as the government's—in the light most favorable to the government, a reasonable factfinder could find that Worldwide's trucks were *capable* of hauling a load off-road but nevertheless were not "specially designed" for that "primary function." 26 U.S.C. § 7701(a)(48)(A)(i). There remains a genuine issue of fact, therefore, as to whether Worldwide has satisfied the special-design prong of § 7701(a)(48)(A)(i). That fact is a material one, of course— Worldwide is not entitled to a refund unless it can satisfy the special-design prong. And thus Worldwide is not entitled to summary judgment. Fed. R. Civ. P. 56.

Worldwide responds with three cases that, in its view, show that Worldwide is in fact entitled to summary judgment. First, Worldwide points to the Sixth Circuit's decision in *Worldwide*. *See Worldwide*, 605 F.3d at 326. There, the Circuit held that there was a genuine issue as to whether the truck "was designed for the primary function of transporting coal other than over the public highways." *Id*. And thus the Circuit held that the government was not entitled to summary judgment. *Id.* What the Circuit did not hold, however, is that the *plaintiff* was entitled to summary judgment. And surviving a summary-judgment motion from the other side is quite a different thing than prevailing on a summary-judgment motion of one's own. Hence nothing in *Worldwide* suggests that Worldwide is entitled to summary judgment here.

Second, Worldwide points to the Eighth Circuit's decision in *GLB Enterprises*. *See GLB Enters., Inc. v. United States*, 232 F.3d 965 (8th Cir. 2000). There, the Circuit merely affirmed a jury verdict that a truck used to load and transport cotton was an off-highway

vehicle. *Id.* at 969. What the Circuit did not say was that the plaintiff would have been entitled to summary judgment (or perhaps to a judgment as a matter of law if the jury had found for the government instead). And surviving a motion for a judgment as a matter of law (which the plaintiffs in *GLB Enterprises* did) is quite a different thing than prevailing on a motion for summary judgment (which the plaintiffs in *GLB Enterprises* did not). Thus, nothing in *GLB Enterprises* changes the result here, either.

Finally, Worldwide points to the tax court's decision in *Myles Lorentz*. *See Myles Lorentz, Inc. v. Comm'r*, 138 T.C. 40 (2012). There, the tax court rendered a decision as a factfinder after the parties had "fully stipulated [to the] facts," thus making a full-dress trial unnecessary. *Id.* at 43. We have no "fully stipulated facts" here. Although Worldwide might ultimately win this case after a bench trial, that possibility hardly implies that Worldwide is entitled to summary judgment now. So this argument fails as well. Worldwide is not entitled to summary judgment on the primary-design prong.

## B. Substantial impairment

Each party argues that it is entitled to summary judgment on the substantial-impairment prong. R. 75-2 at 33–39 (government's motion for summary judgment on the substantial-impairment prong); R. 72 at 37–41 (Worldwide's motion for summary judgment on the substantial-impairment prong). As discussed above, Worldwide is not entitled to summary judgment on the special-design prong. And thus the Court need not address Worldwide's argument that it is entitled to summary judgment on the substantial-impairment prong. After all, Worldwide is entitled to summary judgment only if it shows that all reasonable factfinders would find in its favor as to each of the three prongs.

Worldwide needs to run the table, as it were.  Given that a reasonable factfinder could find against Worldwide on the special-design prong, the Court need not consider whether a reasonable factfinder could find against Worldwide on the other prongs as well.

The government, on the other hand, does not need to run the table.  It is entitled to summary judgment so long as all reasonable factfinders would find in its favor as to any one of the prongs.  This is simply a feature of the way in which the burden of proof is allocated in tax cases: Worldwide bears the burden of showing that it is entitled to the refund.  *See Firsdon*, 95 F.3d at 448.  Thus, if no reasonable factfinder could find in Worldwide's favor as to any one of the three prongs, the government is entitled to summary judgment.  But this time the Court must view the evidence in the light least favorable to the government.

To satisfy the substantial-impairment prong, Worldwide must show that the trucks' "capability to transport a load over the public highway [was] substantially limited or impaired."   26 U.S.C. § 7701(a)(48)(A)(i).  The statute goes on to spell out three factors that a Court may consider when determining whether a vehicle is "substantially limited or impaired"—namely, "the size of the vehicle[;] whether [the] vehicle is subject to the licensing, safety, and other requirements applicable to highway vehicles[;] and whether such vehicle can transport a load at a sustained speed of at least 25 miles per hour."  *Id.* § 7701(a)(48)(A)(iii).  The statute also provides that, when determining whether a vehicle is substantially limited or impaired, "[i]t is immaterial that a vehicle can transport a greater load off the public highway than such vehicle is permitted to transport over the public highway."  *Id.*

The government argues that no reasonable factfinder could find that Worldwide's trucks were substantially limited or impaired in this way.  R. 75-2 at 2 ("No genuine issue of material fact remains for trial on whether the purported special design of [Worldwide's] dump trucks . . . substantially limits or impairs [their] capability to transport a load over the public roads.").  In support of that argument, the government asserts that "[n]othing about the size of [Worldwide's] dump trucks impairs [their] physical capability to transport a load on public roads," R. 75-2 at 12 (citing  R. 66-1 at 128–29; R. 65-1 at 54; R. 79 at 118–20); that "[l]icensing requirements do not limit [Worldwide's] dump trucks['] [ability to transport a load on public roads]," R. 75-2 at 13 (citing R. 67-1 at 125–29; R. 66-1 at 94–95, 97); that "[s]afety requirements do not impair [Worldwide's] dump trucks['] [capability to transport a load on public roads]," R. 75-2 at 14 (citing R. 86 at 111–12; R. 79 at 141–42; R. 67-1 at 71–71, 103–05, 106–08); and that "no 'other requirements' limit [Worldwide's] dump trucks['] [ability to transport a load on public roads]," *id.* at 17 (citing a wide variety of deposition testimony).  Thus, the government argues, there is no genuine issue as to whether Worldwide's trucks' "capability to transport a load over the public highway [was] substantially limited or impaired."   26 U.S.C. § 7701(a)(48)(A).

The first problem with that argument is that the Court must consider the "record as a whole," rather than the government's selective excerpts.  *Nat'l Solid Wastes Mgmt. Ass'n v. Voinovich*, 959 F.2d 590, 592 (6th Cir. 1992).  The second is that the Court must consider the evidence—all of it—in the light most favorable to Worldwide rather than the light most favorable to the government.  *Anderson*, 477 U.S. at 261 n.2.  And Worldwide disputes much of the government's evidence.

First, Worldwide disputes whether "[n]othing about the size of [Worldwide's] dump trucks impairs [their] physical ability to transport a load on public roads."  R. 75-2 at 12. As Worldwide points out, under federal law a vehicle may operate on public highways only if it is no more than 102 inches wide, 23 C.F.R. § 658.15(a), and Worldwide has presented evidence that the trucks were wider than 102 inches.  R. 81 at 26–27 (citing R. 81-11 at 22–23; R. 72-1 at 8; R. 66-1 at 127, 155–65, 167–70; R. 75-46 at 102–107; R. 75-48 at 88–89). The parties spend numerous pages bickering over the proper method for making such measurements—both sides seem to think that the other one has it wrong.  But their squabbling hardly shows that the trucks' true size—and thus their ability to go on the highways—is undisputed.  Indeed, it shows the opposite.  Viewing the evidence in the light most favorable to Worldwide, a reasonable factfinder could find that the trucks were too wide to operate on the public highways legally.

Second, Worldwide disputes the government's contention that "licensing requirements do not limit [Worldwide's] dump trucks['] [capability to transport a load on public roads]." R. 75-2 at 13.  In Worldwide's view, the trucks were wider than 102 inches and thus the operators would have needed to obtain permits to operate them.  *See* R. 81 at 27–29 (detailing these licensing requirements).  The statute specifically instructs courts to consider "whether [the] vehicle is subject to the licensing, safety, and other requirements applicable to highway vehicles" when determining whether a vehicle is substantially impaired from operating on the public highways.  26 U.S.C. § 7701(a)(48)(A)(iii).  And thus evidence that the trucks would need a permit to operate on the highways suggests that the trucks were substantially impaired.  Viewing the evidence in the light most favorable to

Worldwide, a reasonable factfinder could find that the trucks could not be driven on the highways without a proper permit.

Third, Worldwide disputes the government's conclusion that "[s]afety requirements do not impair [Worldwide's] dump trucks['] [capability to transport a load on public roads]." R. 75-2 at 14. In support, Worldwide has offered evidence that the trucks were sold with tires marked "NOT FOR HIGHWAY SERVICE," and that these tires would catch fire if forced to spin at 50 miles per hour for more than an hour. R. 81 at 31 (citing R. 72-11 at 6–9). Viewing this evidence in the light most favorable to Worldwide, a reasonable factfinder could find that the trucks were not safe to operate on the highways.

There are other points of contention—quite a few, actually—but for summary-judgment purposes, the ones detailed above are enough. Viewing all of the evidence in the light most favorable to Worldwide, a reasonable factfinder could find that the trucks' "capability to transport a load over the public highway [was] substantially limited or impaired." 26 U.S.C. § 7701(a)(48)(A). Thus, there remains a genuine issue of fact on that point, which means the government is not entitled to summary judgment.[3]

## IV.

Worldwide has also filed a motion to exclude the testimony of the government's experts pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). But because "this will be a bench trial," "there is no jury to be protected 'from being bamboozled by technical evidence of dubious merit.'" *Douglas v. United States*, No. 10-civ-26-ART, 2011 WL 2633612, at *6 (E.D. Ky. July 5, 2011) (citing *SmithKline Beecham*

---

[3] Worldwide has failed to show that it is entitled to summary judgment on the special-design prong. And the government argues that it is entitled to summary judgment based only on the substantial-impairment prong. Thus, the Court need not consider whether there is a genuine issue as to the third prong—*i.e.*, whether the trucks were substantially impaired "because of" the special design. 26 U.S.C. § 7701(a)(48)(A).

*Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003) (Posner, J., sitting by designation)); *see also Deal v. Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 851 (6th Cir. 2004) (explaining that under *Daubert* "district courts must act as 'gatekeepers' to protect juries from misleading or unreliable expert testimony"). "Although the Court is no Mr. Wizard or Bill Nye ('The Science Guy'), its ability to assess the reliability of expert testimony during trial is somewhat better than that of twelve lay jurors. Thus, although all of [the government's] experts must pass *Daubert* scrutiny before the Court may rely on their testimony to find in [the government's] favor, the 'usual concerns' about shielding the jury from unreliable expert testimony 'obviously do not arise' in a bench trial." *Douglas*, 2011 WL 2633612, at *6 (quoting *Att'y Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009)).

Moreover, "this is just the summary judgment stage of the case," and "the *Daubert* regime should be employed only with great care and circumspection at the summary judgment stage." *Id.* at *7 (citing *Cortes–Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997)). That is because "'in all but the most clear cut cases,' it will be difficult for a court to adequately gauge the reliability of an expert's testimony based on the 'truncated record' that is present at the summary judgment stage." *Id.* (citing *Cortes-Irizarry*, 111 F.3d at 188); *see also Jahn v. Equine Servs.*, 233 F.3d 382, 393 (6th Cir. 2000). "[T]he more prudent course is to defer ruling on the admissibility of . . . the experts' opinions until the Court has the opportunity to hear their testimony live and in-person during trial." *Douglas*, 2011 WL 2633612, at *7.

"The Court could, of course, hold a *Daubert* hearing before trial." *Id.* But in most cases, that would be "an unnecessary waste of the parties' resources." *Id.* "[I]t makes

more sense for the Court to exercise the 'substantial flexibility' it enjoys in the timing of its *Daubert* analysis and evaluate the experts' testimony . . . during the course of the trial itself." *Id.* (citing *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 635 (6th Cir. 2000) (Gilman, J., dissenting)).  And here Worldwide has stated that it does not want the Court to hold a *Daubert* hearing.  R. 98 at 7.  The Court will therefore deny Worldwide's *Daubert* motion without prejudice.  If Worldwide wishes to reassert that motion during trial, it is of course free to do so.

Accordingly, it is **ORDERED** as follows:

(1) The government's motion to dismiss and for summary judgment, R. 75, is

**GRANTED IN PART AND DENIED IN PART**. Worldwide may not proceed on its claim for a tax refund on trucks equipped to haul water, fuel, lube, or fly ash.  The government's motion is otherwise denied.

(2) Worldwide's motion for summary judgment, R. 72, is **DENIED**.

(3) Worldwide's motion to exclude the testimony of the government's experts,

R. 73, is **DENIED WITHOUT PREJUDICE**.

This 23rd day of June, 2016.

**Signed By:**

*Amul R. Thapar*

**United States District Judge**